**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA LAWYERS FUND** | : | **CIVIL ACTION** |
| **FOR CLIENT SECURITY,** | : | |
| *Appellee/Movant,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SHARMIL MCKEE,** | : | |
| *Appellant/Debtor.* | : | **NO. 2:23-cv-00535-CFK** |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                             **October 5, 2023**

## I.    INTRODUCTION

Before the Court is an appeal by Sharmil McKee ("Debtor") from a final order issued by the Bankruptcy Court of the Eastern District of Pennsylvania with respect to claims sought by the Pennsylvania Lawyers Fund for Client Security ("Appellee"). *See Pa. Lawyers Fund for Client Security v. McKee*, Case No. 20-00270-amc, ECF No. 158 (Bankr. E.D. Pa. Jan. 30, 2023). For the reasons set forth below, the Court will affirm the Bankruptcy Court's Order dated January 30, 2023. An appropriate Order will follow.

## II.    BACKGROUND & PROCEDURAL HISTORY

<u>Disciplinary Hearing</u>

Debtor was a licensed, practicing attorney in the Commonwealth of Pennsylvania until October 5, 2016, when the Pennsylvania Supreme Court administratively suspended her law license for failing to pay her annual fee. *See Pa. Lawyers Fund for Client Security v. McKee*, Case No. 20-00270-amc, ECF No. 157 (Bankr. E.D. Pa. Jan. 30, 2023) ("Bankr. Op.") at 4. Prior to her suspension, the Office of Disciplinary Counsel of the Pennsylvania Supreme Court filed a petition

for discipline on February 16, 2016 (the "Petition"), charging Debtor with professional misconduct in ten client matters, including matters involving Samson Joseph ("Joseph") and Lisa Gregg ("Gregg"). *Id.* at 2. On July 7, 2017, following a disciplinary hearing, the Disciplinary Board prepared a report (the "Report and Recommendation") summarizing Debtor's misconduct and recommending professional consequences. *Id.* at 5. Debtor admitted all factual allegations in all the client matters underlying the Petition. *Id.* at 3. On October 18, 2017, upon consideration of the Report and Recommendation, the Pennsylvania Supreme Court ordered a suspension of Debtor's law license for two years for her misconduct. *Id.* at 8.

On September 24, 2018, Disciplinary Counsel and Debtor filed a joint petition in support of discipline on consent under Rule 215(d), Pa. R.D.E. (the "Joint Petition") for five additional charges of misconduct, including a matter involving Martha Watkins ("Watkins") (together with Joseph and Gregg, the "Claimants"). *Id.* at 8. On November 7, 2018, the Pennsylvania Supreme Court granted the Joint Petition in a *per curiam* order. *Id.* at 9. As a result, Debtor's law license was suspended for one year and one day, consecutive to the two-year suspension ordered on October 8, 2017. *Id.*

The Pennsylvania Lawyers Fund for Client Security ("Appellee"), an entity of the Pennsylvania Supreme Court, provides financial compensation to clients harmed by their attorneys' wrongful misconduct. ECF No. 11 at 22; ECF No. 15 at 10. If Appellee makes a reimbursement payment to a claimant, then it enters into a subrogation agreement with the claimant as consideration of such payment for the amount of harm caused, plus 10% annual interest. ECF No. 15 at 11. In other words, a claimant receiving payment would transfer to the Appellee any rights to his or her original claim against the attorney.

<u>Debtor's Bankruptcy Petition</u>

On February 9, 2017, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (case number 2:17-bk-10941-amc). Bankr. Op. at 4. She provided notice of her petition to the Continuing Legal Education Board and the Pennsylvania Attorney Registration, both of which are organized under the Pennsylvania Supreme Court and share a building and mail office with Appellee. ECF No. 11 at 13-14. On June 8, 2017, Debtor was granted a discharge. Bankr. Op. at 4-5. Appellee, after becoming aware of Debtor's bankruptcy case, filed a motion to reopen her case on August 12, 2020, in order to file an adversary complaint. *Id.* at 9. This motion was granted on September 16, 2020. *Id.* at 10. On November 17, 2020, Appellee filed a complaint to determine the dischargeability of the debts owed to the Claimants. *Id.* On January 11, 2021, Appellee filed an amended complaint (the "Complaint"). *Id.* Pursuant to subrogation agreements between Appellee and Claimants, as set forth below, Appellee succeeds to the rights of the Claimants up to $17,350 in aggregate. ECF No. 15 at 14-19. On January 25, 2021, Debtor filed a motion to dismiss and/or strike the Complaint, which was granted without prejudice on May 3, 2021, but only with respect to Count II (brought pursuant to 11 U.S.C. § 523(a)(4) on behalf of Watkins's claim). Bankr. Op. at 11 Debtor's motion to dismiss was denied in all other respects. *Id.* On May 25, 2021, Debtor filed an answer to the Complaint. *Id.*

Debtor and Appellee each filed motions in limine on March 11, 2022 and April 1, 2022, respectively. *Id.* at 11-12. On June 1, 2022, the Bankruptcy Court granted in part and denied in part both Debtor's and Appellee's motions in limine, concluding, *inter alia*, that the Report and Recommendation was admissible evidence and Debtor was collaterally estopped from relitigating findings related to the extent of work she performed for Gregg and Joseph and to mitigation. *Id.* at 12-13.

<u>Bankruptcy Court Trial</u>

On August 25, 2022, the Bankruptcy Court held trial. *Id.* at 13. The Court heard testimony from Debtor regarding her representation of Claimants and made factual determinations based on this testimony and the Disciplinary Board's Report and Recommendation. *Id.* at 13-16. With respect to Debtor's relationship with Joseph and Gregg, the Bankruptcy Court adopted the factual findings of the Report and Recommendation. *Id.* at 12-13.

*Joseph and Gregg Matters*

The Report and Recommendation provides the following findings of fact concerning the Joseph matter:

> [Debtor] agreed to represent Joseph pursuant to a written fee agreement dated July 24, 2009, for a fixed fee of $1,500.00. On January 18, 2010, in the Court of Common Pleas of Philadelphia County, [Debtor] filed suit on behalf of her client *in Joseph v. East West Realty Group, LLC et. al.*, 0110 No. 1902. On September 1, 2010, [Debtor] took a default judgment against the defendant in the amount of $206,000.00. [Debtor] told Joseph that she would agree to collect the judgment for an additional fee of $2,500.00 plus a contingency fee of 20% of the gross amount collected on the judgment. On September 20, 2010, Joseph paid [Debtor] with a check for $2,500.00. Thereafter, Joseph gave [Debtor] two checks noted in the memo section as 'Sheriff fee.' The first check, dated October 29, 2010, was for the amount of $2,500.00. The second check, dated March 3, 2011, in the amount of $2,000.00, was also identified on the instrument as 'for Sheriff fee.' [Debtor] deposited both checks in the Police and Fire Credit Union account, a non-IOLTA account. On several occasions subsequent to March 3, 2011, Joseph sought information from [Debtor] concerning the status of his matter and the payment of the sheriff's fees. He received no information or response from [Debtor]. [Debtor] made no further efforts to enforce the judgment in favor of her client. Joseph subsequently sought new counsel. [Debtor] wrote to Joseph's new counsel that Joseph had not paid her the $10,000.00 (the balance of the fee [Debtor] claimed that she and Joseph had orally agreed upon) and when [Debtor] received that money she would proceed to execute on his judgment. [Debtor] offered to settle her dispute with Joseph by offering to 'waive' the balance of her claimed unpaid fee against Joseph while keeping the balance already paid, even though

4

> she had done nothing to earn any of the fee in her possession and
> did not offer to return the monies forwarded to her that had been
> described as 'sheriff fees.'

ECF No. 4-1 at 740–41 (cleaned up).

The Report and Recommendation provides the following findings of fact concerning the

Gregg matter:

> Gregg retained [Debtor] to represent her in two separate matters, one
> against DirecTV and one against Gregg's landlord. [Debtor] agreed
> to represent Gregg pro bono in the landlord/tenant action. [Debtor]
> agreed to charge Gregg $1,500.00 for the DirecTV matter. [Debtor]
> collected a settlement in the amount of $10,000.00 on behalf of her
> client against DirecTV. Further, DirecTV agreed to remove a
> $900.00 improper delinquency charge on Gregg's credit report.
> [Debtor] has retained the full proceeds of the settlement and has
> refused to communicate with Gregg about the matter on the
> telephone or in response to written communications. [Debtor]
> provided Gregg with a list of costs in excess of $22,000.00 that
> [Debtor] claimed she had expended in the prosecution of Gregg's
> matter. [Debtor] did not provide copies of any of the alleged bills or
> canceled checks she issued in payment of the alleged bills and has
> not paid over any of the proceeds of the settlement to Gregg.

*Id.* at 741 (cleaned up).

The Report and Recommendation also provided conclusions of law, including, *inter alia*,

that Debtor violated various rules of professional conduct and that she engaged in dishonest,

fraudulent, deceitful, or misrepresentative conduct. ECF No. 4 at 4. After Joseph filed a claim with

Appellee seeking reimbursement for the harm caused by Debtor's conduct, Appellee paid Joseph

$7,000 to resolve his claim and entered into a subrogation agreement with him. Bankr. Op at 3.

Gregg similarly filed a reimbursement claim; Appellee subsequently paid Gregg $8,700 to resolve

her claim and entered into a subrogation agreement with her. *Id.* at 7-8.

*Watkins Matter*

Unlike with the Joseph and Gregg matters, the Bankruptcy Court heard direct testimony from Watkins at trial concerning Debtor's conduct with respect to Watkins and did not rely on collateral estoppel in its findings. *Id.* at 13-15. In 2015, Watkins retained Debtor for a real property dispute in Delaware County, seeking to recover $20,000. *Id.* at 13. Though Watkins paid Debtor a total of $1,650 for her representation, Debtor later sent Watkins a letter stating that Watkins still owed Debtor $8,500. *Id.* at 13-14. Watkins testified that she had no recollection of receiving the letter, and would not have hired Debtor for $10,000 given the damages sought. *Id.* at 14.

On December 14, 2015, Debtor appeared with Watkins at a hearing on the real property dispute, at which the judge informed Debtor that she had filed the action in the wrong jurisdiction. *Id.* at 14. After the court ordered a change in venue, Debtor did not make any filings, nor open any action, in the new jurisdiction. *Id.* at 14-15. When Watkins learned from a third party that Debtor's law license had been suspended, she terminated Debtor as her attorney and requested a return of her funds, but she never received a refund from Debtor. *Id.* at 15.

After Watkins filed a claim with Appellee seeking reimbursement for the harm caused by Debtor's conduct, Appellee paid Watkins $1,650 to resolve her claim and entered into a subrogation agreement with her. Bankr. Op. at 9.

*Mental Health Evidence*

To provide evidence for mitigating circumstances, Debtor attempted to introduce testimony regarding her mental health from Martha Durkin, her therapist. *See* Case No. 20-00270-amc, ECF No. 135 ("MIL Order") ¶ 27. The Bankruptcy Court excluded Durkin's testimony for multiple reasons, including irrelevance under Federal Rule of Evidence 402 and Debtor's failure to file timely pretrial disclosures. *Id.* ¶¶ 27-45. Debtor missed the deadline to file pretrial

6

disclosures, like a trial witness list including Durkin, by 45 days. ECF No. 11 at 44. Appellee similarly missed the deadline by 26 days. ECF No. 11 at 44. The Bankruptcy Court further found Durkin's testimony to be irrelevant, since Durkin testified in the disciplinary hearing that she could not specifically relate Debtor's emotional health to her misconduct. MIL Order ¶ 43.

*Trial Order*

On January 30, 2023, the Bankruptcy Court entered an order concluding that: (1) Appellee's claims as to the Claimants were non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); (2) Appellee's claims as to Joseph and Gregg were non-dischargeable pursuant to 11 U.S.C. § 523(a)(4); and (3) Appellee's claim as to Joseph was non-dischargeable pursuant to 11 U.S.C. § 523(a)(7). *See* Case No. 20-00270-amc, ECF No. 158. Along with the Order, the Bankruptcy Judge filed a thorough and well-reasoned opinion addressing each issue. *See generally,* Bankr. Op.

Appeal

On February 7, 2023, Debtor filed notice of appeal from the Bankruptcy Court's final order dated January 30, 2023, challenging the Court's determination that the debts owed to Claimants are non-dischargeable. *See* ECF No. 1. Debtor's brief was filed with this Court on May 9, 2023, to which Appellee responded on June 6, 2023. *See* ECF Nos. 11, 15. The Court directed Debtor to submit a reply brief by July 11, 2023, which Debtor did, but raised a new issue not addressed in its previous briefing. ECF No. 17. The Court permitted Appellee to file a surreply, which it did on August 2, 2023. ECF No. 23. This matter is now fully briefed and ripe for consideration.

III.    STANDARD OF REVIEW

The Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1).

Where a district court reviews a decision of the bankruptcy court on questions of fact, the court applies a clearly erroneous standard of review. *Woodard v. City of Phila.*, 558 B.R. 711, 716-17 (E.D. Pa. 2016) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)). Under this clearly erroneous standard of review, the bankruptcy court's findings of fact must stand unless "the court is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Brager v. Blum*, 49 B.R. 626, 629 (E.D. Pa. 1985)); *see also Boltz-Rubinstein v. Bank of America, N.A.*, 624 B.R. 756, 761 (Bankr. E.D. Pa. 2021) ("[A] court can overturn findings fact only if they (1) are completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bear[] no rational relationship to the supportive evidentiary data.") (internal citations omitted). Since the Bankruptcy Court heard firsthand testimony from witnesses, "we give due regard to the opportunity of that court to judge first-hand their credibility." *In re Somerset Regional Water Resources, LLC*, 949 F.3d 837, 844 (3d Cir. 2020).

However, "the 'clearly erroneous standard' does not apply to questions of law. Thus, where the appellate question presented is solely one of law, no presumption of correctness applies. The bankruptcy judge's legal conclusions may not be approved without [the district court's] independent determination of the legal questions." *Woodard*, 558 B.R. at 716-17 (quoting *In re Gilchrist Co.*, 410 F. Supp. 1070, 1074 (E.D. Pa. 1976) (citations omitted)); *see also Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-03 (3d Cir. 1981). Therefore, a bankruptcy court's conclusions of law are subject to plenary review. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Kimmelman v. Port Authority*, 344 F.3d 311, 316 (3d Cir. 2003).

Where the court reviews mixed questions of law and fact, the court must "break [them] down . . . applying the appropriate standard to each component." *In re Li*, 249 B.R. 388, 389-90

(E.D. Pa. 2000). "The standard of review depends on whether answering [the question] entails primarily legal or factual work," and judgments involving "a raft of case-specific historical facts" will be subject to the clear error standard. *Boltz-Rubinstein*, 624 B.R. at 761 (internal citations omitted).[1]

Finally, discretionary decisions by the trial judge are reviewed under the abuse of discretion standard. *In re Imerys Talc America, Inc.*, 38 F.4th 361, 370 (3d Cir. 2022).

## IV.   DISCUSSION

### A.  Appellee's Notice of the Underlying Bankruptcy Filing

Debtor first argues that the Bankruptcy Court erred in ruling that neither the Claimants nor Appellee had notice or actual knowledge of the Debtor's bankruptcy filing, and therefore, the Bankruptcy Court's finding that Appellee's claims were not time-barred was erroneous. ECF No. 11 at 21-27. Debtor acknowledges that she did not serve notice on the Appellee directly. *Id.* at 21-22. However, she contends that she served notice on other entities that are housed within the same building as Appellee, and that Appellee and the served entities are all divisions of the Pennsylvania Supreme Court, which should be sufficient to confer notice upon Appellee.[2] *Id.* at 23.

Appellee responds that they have a separate address and mailing address from the served entities, and that notice to the served entities should not automatically be imputed onto Appellee. *See* ECF No. 15 at 22-26.

---

[1] Debtor appears to argue that since some of the six issues raised are questions of law and others are questions of fact, a de novo standard should apply to each issue. ECF No. 11 at 11. For the reasons discussed in this Section, this is incorrect.

[2] Debtor asserts that Appellee had "actual notice" of Debtor's case, but does not put forth any facts suggesting that Appellee had actual knowledge of the case beyond her arguments that her notice was legally sufficient. *See* ECF No. 11 at 25-27. As such, Debtor has waived the argument that Appellee had actual knowledge of Debtor's bankruptcy filing.

The parties do not dispute the relevant fact, namely, that Debtor did not list Appellee on her Certificate of Notice. However, Debtor argues that notice to other parties was legally sufficient to provide notice to Appellee. ECF No. 11 at 26-27. As such, this is a question of law reviewed de novo.[3]

Debtor states that she served notice of her bankruptcy petition upon the Continuing Legal Education Board, 601 Commonwealth Avenue, Suite 3400, Harrisburg, PA, as well as Pennsylvania Attorney Registration, 601 Commonwealth Avenue, Suite 5600, Harrisburg, PA.[4] ECF No. 11 at 21-22. She does not assert that she served notice upon Appellee directly, which has the address of 601 Commonwealth Avenue, Suite 5400, Harrisburg, PA 17120. *Id.*

The determination of whether notice is adequately served when addressed to the wrong government entity is a fact-specific inquiry that "depends upon the facts and circumstances of a given case." *U.S. Small Business Admin. v. Bridges*, 894 F.2d 108, 111 (5th Cir. 1990). Federal courts have warned that when providing notice to large and bureaucratic government entities, debtors "should give special attention to insure timely and meaningful notice to the correct agency." *Id.*; *see also In re Main*, 157 B.R. 786, 790 (Bankr. W.D. Pa. 1992) (citing *Bridges* favorably for the proposition that "an inadequately addressed notice could not reasonably apprise a large and complex institution of its rights in a bankruptcy proceeding."). Moreover, contrary to Debtor's unsupported assertions, notice to one government agency or branch thereof is not by itself sufficient to put all related agencies on notice as well. *See In re Santos*, 589 B.R. 413, 421 (Bankr.

---

[3] Appellee cites to the Bankruptcy Court's statement in open court that it was a "fact that no notice was given to the Pennsylvania Lawyers Fund" in support of their argument that this question should be under the clearly erroneous standard. *See* ECF No. 13-85 at 4; ECF No. 15 at 22. However, while it is a fact that Appellee was not listed on Debtor's Certificate of Notice, the question of whether notice to other government entities was sufficient is a legal issue.

[4] This Court notes that Debtor's Certificate of Notice contains the incorrect zip code for both of these entities; Debtor served notice upon the entities at zip code 17106, while the correct zip code is 17120. *Compare* ECF No. 13-2 at 22 *with* ECF No. 15 at 24. This Court further notes that Debtor's brief misstates the addresses for Appellee and Pennsylvania Attorney Registration. *Compare* ECF No. 11 at 21 *with* ECF No. 15 at 24.

D. Col. 2018) (finding notice to the State of Colorado was not sufficient to put the Colorado Department of Human Services on notice); *Bridges*, 894 F.2d at 110-11 (finding notice to a branch office of the Small Business Administration was not sufficient to put the SBA on notice); *see also U.S. v. Golenburg*, 175 F. Supp. 415, 418 (N.D. Ohio 1959) ("The unreasonableness of imputing notice from one agency to another is obvious.").

Debtor concededly listed the incorrect entity on her Certificate of Notice, and can point to no facts indicating that Appellee was reasonably calculated to have notice. Even though Appellee shares the same building – and even "administrative mail staff" – as other entities that were scheduled, nothing in Debtor's Certificate of Notice could have tipped off the other entities that Appellee should receive notice as well. In other words, there would be no reason for the mail staff – or anyone else – to bring the matter to Appellee's attention, since Appellee was not listed on the Certificate of Notice. Debtor states, citing to no authority, that "[c]ourts have held that notice to one group member is considered notice to all other group members," and that "[n]otice to one division of an organization should be considered notice to the other divisions of the organization." ECF No. 11 at 23. The opposite is true, especially when dealing with governmental or bureaucratic organizations. Debtor's notice was insufficient.

### B.  Collateral Estoppel from the Report and Recommendation

Debtor next objects to the Bankruptcy Court's application of collateral estoppel to the Report and Recommendation, arguing that she should have been able to present evidence at her Bankruptcy Court trial on the issues addressed in the Report and Recommendation. *See* ECF No. 11 at 28-34. This is a question of law, reviewed de novo.

Collateral estoppel applies under Pennsylvania law if: "(1) the issue decided in a prior case is identical to the issue presented in a later case; (2) there was a final judgment on the merits in the

prior case; (3) the party against whom the doctrine is asserted was a party to or is in privity with a party to the prior case; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior case." *Adelphia Gateway, LLC v. Pennsylvania Environmental Hearing Board*, 62 F.4th 819, 826 (3d Cir. 2023) (citing *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)). This doctrine is "based on the policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Commonwealth Dep't of Corrections v. W.C.A.B. (Wagner-Stover)*, 6 A.3d 603, 608 (Pa. Commw. Ct. Oct. 1, 2010) (internal citation omitted).[5] The ability to seek appellate or judicial review further demonstrates a party had a full and fair opportunity to litigate an issue. *See Hitchens v. Cty. of Montgomery*, 98 F. App'x. 106, 115 (3d Cir. 2004).

Debtor's appeal makes two related arguments in service of her claim that she should have been able to present evidence to demonstrate her lack of intent to commit fraud (or false pretenses). First, she asserts that the Disciplinary Board's findings on her professional misconduct are not identical to the false pretenses claim, such that the Bankruptcy Court should not have been able to use estoppel on the misconduct issue to prevent litigation of the false pretenses question. ECF No. 11 at 31-32. Second, she alleges that the Report and Recommendation upon which estoppel was based was a consent judgment which relied upon her factual stipulations, and thus was not proper to use to estop since it was not actually litigated. *Id.* at 32-33.

---

[5] Adjudications by administrative agencies are entitled to preclusive effect "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 797 (1986) (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421-22 (1966)). Debtor does not claim that the Disciplinary Board was not a court of competent jurisdiction, so this argument is waived.

As to the first argument, Debtor's position misunderstands the Bankruptcy Court's opinion. Debtor argues that the Bankruptcy Court used findings of professional misconduct to reach a conclusion of false pretenses (which Debtor construes as fraud), even though "fraud necessitates a greater degree of intent" and "demands evidence of the Debtor's mental state." ECF No. 11 at 32. However, the Bankruptcy Court is not required to use collateral estoppel as Debtor implies. Under Pennsylvania law, purely factual issues that have been previously adjudicated are considered identical for collateral estoppel purposes. *See Rue*, 713 A.2d at 85-86; *see also Jones v. United Parcel Service*, 214 F.3d 402, 406 (3d Cir. 2000). As the Pennsylvania Supreme Court succinctly put it, "a fact is a fact." *Rue*, 713 A.2d at 85. Pennsylvania courts will find collateral estoppel where "the dipositive factual question . . . was identical in each proceeding." *Wagner Stover*, 6 A.3d at 612; *see also Irizarry v. Office of General Counsel*, 934 A.2d 143, 152 (Pa. Commw. Ct. Oct. 3, 2007) (finding preclusion where "there were two separate legal issues presented in the two proceedings. However, the material facts necessary to the disposition of both actions were identical . . . ."). As the Third Circuit has explained, "questions turning on pure facts are preclusive in later litigation dealing with the same facts, regardless of the legal standard or the public policy behind the different suits." *Minnick v. City of Duquesne*, 65 F. App'x 417, 421 (3d Cir. 2003) (citing *Rue*, 713 A.2d at 85). In *Li v. Peng*, the court found issues identical for collateral estoppel purposes where "the underlying factual issues surrounding Appellant's fraud and misappropriation of client funds [in a Disciplinary Board hearing] . . . were identical to those before the Bankruptcy Court," even where the particular legal claims differed. 516 B.R. 26, 36 (Bankr. D.N.J. 2014).

With this legal background, the Bankruptcy Judge correctly applied estoppel. She did not mechanically translate a legal finding on professional misconduct to a legal finding on false

pretenses. Instead, she used the facts established in the Disciplinary Board hearing to determine whether the legal standard for false pretenses was met – exactly as Pennsylvania courts have laid down the collateral estoppel doctrine. This decision fulfills the policy goals of collateral estoppel by preventing a party from trying a second legal strategy on the same set of facts after the first set of tactics failed. Here, there is no dispute that the facts themselves were identical, so this element of collateral estoppel was fulfilled.

Second, Debtor did have a full and fair opportunity to litigate the extent of her misconduct. The Disciplinary Board held a hearing at which Debtor had the opportunity to testify, present witnesses, and put forth evidence. Bankr. Op. at 3. Instead of contesting the allegations or submitting exculpatory evidence, the Debtor chose to stipulate to the relevant facts, and only be heard in mitigation (which the Disciplinary Board did not find convincing). *Id.* Debtor now objects that it is improper for stipulated facts as to her misconduct to have preclusive effect, and seeks to introduce the additional evidence that the Bankruptcy Court precluded her from introducing. ECF No. 11 at 40-41. These arguments are wrong, on both legal and factual grounds.

As a factual matter, Debtor conflates the Report and Recommendation (which only included evidence as to Joseph and Gregg) with the Joint Petition, appearing to argue that since the Joint Petition is equivalent to a consent decree or judgment, she should not have been estopped from offering evidence related to the Report and Recommendation. *See, e.g.*, ECF No. 11 at 30-31. However, contrary to Debtor's repeated assertions, the Report and Recommendation was *not* in fact a consent judgment or settlement. The Disciplinary Board issued a Report and Recommendation on July 7, 2017, pertaining to ten client matters including Joseph and Gregg. ECF No. 4 at 236-259. On October 18, 2017, the Supreme Court of Pennsylvania entered an order

suspending Debtor from the practice of law for two years "upon consideration of the Report and Recommendation of the Disciplinary board." Bankr. Op. at 8.

On September 24, 2018, Debtor filed the Joint Petition with Disciplinary Counsel on consent, settling five *additional* charges, including the Watkins matter, which imposed an *additional* one year and one day suspension of Debtor, to run consecutively to her two year suspension. ECF No. 4 at 263-305. The Debtor improperly conflates the Report and Recommendation with the Joint Petition, appearing to argue that the stipulated facts found in the Report and Recommendation are equivalent to the Joint Petition on consent for *separate* charges. Bankr. Op. at 8; ECF No. 11 at 30-31.

In reality, the Bankruptcy Court only estopped Debtor from bringing in additional evidence related to Joseph and Gregg. Bankr. Op. at 12-13. In the Report and Recommendation pertaining to those proceedings, Debtor stipulated to facts concerning her conduct, and an adversarial hearing was held by the Disciplinary Board at which Debtor testified, offered expert witness testimony, and had the opportunity to submit evidence. ECF No. 4 at 236-259; Bankr. Op. at 3.

The Joint Petition was in fact a consent judgment that included charges related to Watkins, but Debtor was *not* estopped from bringing in evidence pertaining to Watkins at her Bankruptcy Court trial. MIL Order ¶ 56. In fact, the Bankruptcy Court's Motion in Limine Order specifically permitted Debtor to bring in "Other Work Evidence relating to the Watkins claim," and allowed her to offer testimony of three individuals relating to the Watkins claim. *Id.* ¶¶ 56, 62. At trial, Debtor testified, her attorney cross-examined Watkins, and she introduced evidence. *See* Bankr. Op. at 13-15. Therefore, Debtor's complaint about the Court relying on stipulations can only pertain to stipulations she made related to the Report and Recommendation.[6]

---

[6] In fact, the Bankruptcy Court specifically excluded the Joint Petition from evidence at trial under F.R.E. 408 for precisely the reasons that Debtor sets out. MIL Order ¶ 24.

Generally, stipulations are not entitled to preclusive effect, in order to reserve collateral estoppel for "issues or points controverted." *Bradburn Parent Teacher Store, Inc. v. 3M*, No. 2-cv-7676, 2005 WL 736629, at *6 (E.D. Pa. Mar. 30, 2005). However, collateral estoppel can be properly used "where the fact finder's determination of those issues was partially based upon facts stipulated by the parties." *Id.* at *7. This doctrine takes greater force when "the decision to agree to certain facts was a decision made by [the defendant] as part of its litigation strategy." *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1213 (S.D.N.Y. 1981). Another strong consideration for giving stipulations preclusive effect "is that a lawyer's recognition that the evidence is so stacked against him on some point that a failure to admit it will open him to sanctions under Fed. R. Civ. P. 37(c) is as good an indication of where the truth probably lies as a determination by a judge or a jury." *Kairys v. I.N.S.*, 981 F.2d 937, 941 (7th Cir. 1992).

Debtor sought to introduce evidence at her Bankruptcy Court trial that contradicted the stipulations made prior to her Disciplinary Board hearing. ECF No. 11 at 33-34. The only possibilities are that 1) the facts the Debtor stipulated to are correct and she chose not to contest them so as to avoid sanctions, or 2) she chose not to contest them at the time, believing an alternative strategy focused on her mental health would be more successful. In either case, she is not entitled to collateral estoppel on those stipulations. As the stipulations only pertained to the Report and Recommendation (and not the Joint Petition), the stipulations were not made as part of a negotiated settlement, and "[t]he fact that the case was tried upon stipulation of fact does not make it any the less a final adjudication of the plaintiff's claim." *Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 466-67 (3d Cir. 1950).

The record is clear that stipulating to the facts about her conduct before the Disciplinary Board was a conscious decision made as part of a litigation strategy designed to avoid lengthy

process and receive a lighter punishment – Debtor comes close to admitting as much in her brief. *See* ECF No. 11 at 32-33. Having lost the first time, Debtor cannot come now for her second bite at the apple with a different approach.

### C.  False Pretenses by Preponderance of the Evidence

Debtor next alleges that the Bankruptcy Court should not have found that Debtor committed fraud (or false pretenses), since there were not sufficient facts to so conclude on the preponderance of the evidence. ECF No. 11 at 34-41. Debtor bases this contention in part on her (again, erroneous) allegation that the Report and Recommendation was part of a settlement between Debtor and the Disciplinary Board, and thus the Bankruptcy Court should not have taken it at face value. *Id.* at 36. The Debtor also finds it unfair for the judge to infer fraudulent intent based on Debtor's presentation at trial, specifically her failure to remember particular details about long-ago events. *Id.* at 36-37.

The facts found by the Bankruptcy Court are considered under the clearly erroneous standard, bearing in mind that appellate courts should "usually review a decision with deference" when it deals with "case-specific factual issues – compelling them to marshal and weigh evidence [and] make credibility judgments." *U.S. Bank Nat. Ass'n ex rel. CW Capital Asset Management LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018). However, whether those facts meet the legal standard for false pretenses is considered de novo.

A § 523(a)(2)(A) claim based on false pretenses "requires proof of an implied misrepresentation promoted knowingly and willingly that creates a misleading understanding of the transaction by the plaintiff." *LL Lifestyle, Inc. v. Vidal (In re Vidal)*, No. Adv. 10-0335, 2012 WL 3907847, at *15 (Bankr. E.D. Pa. Sept. 7, 2012).

The Bankruptcy Court relied heavily on the Report and Recommendation, and as previously discussed, that Court was estopped from relitigating the factual findings contained in the Report and Recommendation. Therefore, the Bankruptcy Court properly adopted the factual findings from the Report and Recommendation. In addition to those findings, the Bankruptcy Court held a trial at which Debtor testified, along with Watkins, who was cross-examined by Debtor's attorney. Bankr. Op. at 13-14. Debtor also submitted evidence at trial. *Id*. at 14. The Bankruptcy Judge assessed the credibility of Debtor's trial testimony based on discrepancies between that testimony and her deposition testimony, her performance on cross-examination, her failure to remember critical details, and the surrounding facts and circumstances. Bankr. Op. at 13-16, 21 n.13, 23. The trial court judge has a "unique opportunity . . . to evaluate the credibility of witnesses and to weigh the evidence," and thus her assessment of Debtor's credibility is given deference. *Inwood Laboratories, Inc., v. Ives Laboratories, Inc.*, 456 U.S. 844, 855 (1982).

Based on the factual findings laid out in the Report and Recommendation as well as the Bankruptcy Judge's assessment of Debtor's testimony at trial, this Court concludes that there is a preponderance of the evidence demonstrating that Debtor committed false pretenses.

Debtor's primary defense is that her self-serving testimony is itself sufficient evidence to find in her favor. ECF No. 11 at 38-39. Debtor alludes to evidence that was excluded by the Bankruptcy Court, including evidence that she was estopped from presenting, and mental health evidence that was excluded via motion in limine. *Id.* at 37, 39. Finally, Debtor posits some potential alternative explanations for her behavior. *See* ECF No. 11 at 39-40 ("Financial difficulties, life stressors, and personal circumstances *may have* played a significant role in the Debtor's action"); ("the Debtor's failure to provide documentation for expenses and fee arrangements *may stem from*

poor record-keeping practices or memory recall issues"); ("Client dissatisfaction . . . *may also have*
contributed to the Complaints against the Debtor.") (all emphasis added).

The facts at issue are primarily based on 1) facts stipulated to by the Debtor and 2) the
Bankruptcy Judge's assessment of Debtor's credibility at trial. As to each Claimant, there is
substantial evidence to fulfill the elements of false pretenses.

With regard to Joseph, the Bankruptcy Court found that Debtor agreed to collect a default
judgment on Joseph's behalf for a fixed fee of $1,500, then charged him an additional $4,500 with
no explanation, and demanded a 20% contingency on the default judgment on top of those fees.
Bankr. Op. at 5-6. Debtor then cut off communication with Joseph, and never ultimately collected
the default judgment. *Id.* at 6. The Bankruptcy Judge found Debtor's explanations not to be
credible. When questioned about Joseph, she claimed they had a subsequent oral arrangement that
he would pay her $10,000, but "struggled to recall the details of that arrangement and how she
communicated that arrangement to Mr. Joseph." *Id.* at 16. Failure to remember details such as
these weighed against Debtor's credibility when they formed a critical part of the case.

With regard to Gregg, the Bankruptcy Court found that Debtor collected a $10,000
settlement on Gregg's behalf, did not provide Gregg with any settlement proceeds, refused to
communicate with her, and charged Gregg $22,000 in costs without substantiating those costs. *Id.*
at 6, 22. Moreover, the Report and Recommendation found, based on Debtor's admissions, that
Debtor gave Gregg the misleading impression that she would represent her for only $1,500. ECF
No. 4-1 at 741. Although Debtor at trial that she had a different fee arrangement with Gregg, she
is precluded from relitigating the Report and Recommendation's finding. Bankr. Op. at 22 n.15.
On its face, the logic that Gregg would agree to an arrangement where she would lose a substantial

amount of money collecting a verdict is difficult to accept and suggests more than mere misscomunication.

Finally, the Bankruptcy Court found that Debtor filed an action in the wrong jurisdiction on behalf of Watkins, then took no further action when the case was transferred, cut off all communication with Watkins, and did not return her $1,650 fee as Watkins requested. *Id.* at 13-14. At trial, Debtor introduced a letter from herself to Watkins stating that Watkins still owed Debtor $8,500 in fees, and would pay $500 each month. *Id.* at 14. The Bankruptcy Judge did not find the letter, or Debtor's averments regarding it at trial, to be credible, and conversely did find Watkins' "unequivocal representation that she would never have paid $10,000 to collect $20,000 credible." *Id.*

In each case, the weight of the evidence demonstrates that Debtor requested funds for services, then evinced little to no effort in performing those services, while purporting there to be evidence that she subsequently charged additional funds on top of her original charges. With the Bankruptcy Judge's findings that Debtor's purported subsequent fee arrangements were not credible, there is strong evidence indicating that she knowingly misled each Claimant into forwarding her money before disappearing without performing the required services – each element of the false pretenses claim.

### D.  Exclusion of Mental Health Evidence

Debtor argues that the Bankruptcy Judge should not have excluded the admittedly-late Durkin report and testimony, since Durkin was the critical witness in the case. ECF No. 11 at 41-46. By way of explanation, Debtor claims that the reason for her delay in disclosing Durkin was a high level of case activity at the time her disclosures were due. *Id.* at 43-44. The exclusion

was a discretionary decision by the Bankruptcy Judge, and thus subject to the abuse of discretion standard.

According to the relevant rule, "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The facts underlying this issue are not complex or disputed. The Bankruptcy Judge entered a pretrial order on May 26, 2021, and initial disclosures were completed on June 30, 2021. MIL Order ¶ 29. Those initial disclosures did not mention Durkin. *Id.* Fact discovery closed on August 26, 2021, with no discovery taken of Durkin. *Id.* Pretrial disclosures were due on October 10, 2021, but Debtor did not make pretrial disclosures until November 24, 2021, at which point she disclosed Durkin as a witness. ECF No. 11 at 43-44.

 Excluding a witness completely is undoubtedly a severe sanction, but Debtor's conduct is inexplicable. As Debtor repeatedly notes, Durkin's "testimony was directly related to the central question before the bankruptcy court." ECF No. 11 at 43; *see also id.* at 46 ("Ms. Durkin's testimony was relevant to the central question before the bankruptcy court concerning the Debtor's mental state."). Taking that at face value, Debtor must have known from the outset of this litigation that she would plan to call Durkin. Nevertheless, she did not disclose Durkin until 147 days after initial disclosures were due, and 45 days after pretrial disclosures were due. The degree of case activity is unavailing as a justification. Listing Durkin in disclosures is not equivalent to briefing an extensive motion – it requires a mere few lines in a filing. That Debtor failed to do so for nearly five months is facially unjustified.

Nor was the failure harmless, as opposing counsel had been preparing their case for nearly five months under the mistaken assumption that Durkin would not be a part of the case, reasoning that since she was such a central witness, Debtor's failure to include her on disclosures must have been intentional. The Bankruptcy Judge did not abuse its discretion in excluding a central witness when the minimal disclosure requirements were so blatantly violated.

### E.  Statute of Limitations for the Bankruptcy Action

Debtor asserts that this bankruptcy action is barred by the statute of limitations, alleging that Claimants' fraud claims expired in 2011, 2014, and 2016. ECF No. 11 at 48. Debtor further claims that the statute of limitations for these claims were not tolled by the subrogation agreements, nor an attempt to "relieve fraud or its equivalent." *Id.* Debtor proceeds to argue that since the claim is barred by the statute of limitations, it is unenforceable and should then be disallowed. ECF No. 11 at 47 (citing 11 U.S.C. §502(b)(1)).

The statute of limitations is an affirmative defense, and it "must be supported by factual allegations sufficient to give rise to the affirmative defense." *El-Gharbaoui v. Ajayi*, 260 A.3d 944, 963 (Pa. Super. Ct. 2021); *see also In re Main*, 133 B.R. 746, 750 (Bankr. W.D. Pa. 1991) ("Debtor, by virtue of raising [the statute of limitations] as an affirmative defense, assumes the burden of proving that [plaintiff] received timely notice of the bankruptcy and that the present action against him is untimely."). A statute of limitations only begins to run where there is an "inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). In the first instance, diligence can only be "expected [of] a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Id.*

Debtor states in a conclusory fashion that Claimants' fraud claims expired in 2011, 2014, and 2016. ECF No. 11 at 48. She does not state how long the relevant statute of limitations extends or provide any facts to support the dates she alleged it to have run. ECF No. 11 at 48-50. The Bankruptcy Judge could not determine when the statute of limitations could have run. Bankr. Op. at 17 n.10 ("the Court is unable to determine from the record dates from which the statute of limitations may have run, including dates breaches of duties or contracts occurred, on which any negligent acts took place, or when any wrongdoing or fraud may have been discovered, particularly given that the Report and Recommendation does not reference such dates and the testimony at Trial lacked precision regarding those types of dates."). Nor does Debtor's brief shed any further light on any of the open questions left by the Bankruptcy Court. Debtor also did not explain why Appellee should have had notice to begin investigating the claims when Debtor failed to provide adequate notice to Appellee (*see* Section A, *supra*). Therefore, Debtor has not carried her burden to establish that the statute of limitations had expired.

Moreover, the statute of limitations does not extinguish a debt; rather, it is a procedural obstacle that "does not mean that the debt itself has been extinguished." *In re Keeler*, 440 B.R. 354, 364 (Bankr. E.D. Pa. 2009) (citing *Ehsanuddin v. Wolpoff & Abramson*, No. 06-cv-708, 2007 WL 543052, at *4 n.1 (W.D. Pa. Feb. 16, 2007)). In other words, "the statute of limitations foreclose[s] judicial remedies rather than eliminat[ing] the underlying rights." *Aronson v. Commercial Financial Services, Inc.*, No. 96-cv-2113, 1997 WL 1038818, at *3 (W.D. Pa. Dec. 22, 1997). Indeed, a debt barred under the statute of limitations *can* still be enforced, even if by "means, other than judicial means." *Ehsanuddin*, 2007 WL 543052, at *4 n.1. Thus even if the statute of limitations applied, that in itself would not render Appellee's claim unenforceable pursuant to 11 U.S.C. § 502(b)(1).

### F.  Dischargeability of Debt Under 11 U.S.C. § 523(a)(7)

In Debtor's Reply Brief, she raised for the first time an argument that the debt was dischargeable under 11 U.S.C. § 523(a)(7) since the debt was not a penalty, and meant to provide compensation to victims. ECF No. 17 at 9-10. The Court has plenary review over this legal question.

Pursuant to 11 U.S.C. § 523(a)(7), a debt is not discharged "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ." *Tepes v. Sage (In re Sage)*, 640 B.R. 377, 385 (Bankr. E.D. Pa. 2022). Debtor does not dispute that Appellee is a governmental unit. ECF No. 17 at 9 n.3. Therefore, this analysis will focus on whether the payments to Appellee are 1) for a fine, penalty or forfeiture, and 2) compensation for actual pecuniary loss.

Pennsylvania R.D.E. 531 states that an attorney who is suspended for dishonest conduct cannot be reinstated by the Supreme Court "until the Covered Attorney has paid in full a *penalty* to the Fund assessed in the amount of all disbursements made from the Fund with respect to the Dishonest Conduct of such Covered attorney, plus 10% per annum interest." R.D.E. 531 (emphasis added).

The Supreme Court has held that a criminal restitution order is premised on penal goals, rather than obtaining compensation for victims, since victims have "no control over the amount of restitution awarded or over the decision to award restitution." *In re Feingold*, 730 F.3d 1268, 1274 (11th Cir. 2013) (citing *Kelly v. Robinson*, 479 U.S. 36, 52 (1986)). Attorney disciplinary proceedings share the same goals; "the ultimate goal of both criminal and attorney disciplinary proceedings is to protect the public. . . . Monetary penalties imposed against the offender, whether part of an attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and

rehabilitative interests." *Attorney Grievance Comm'n v. Smith*, 317 B.R. 302, 309 (Bankr. D. Md. 2004); *see also Office of Disciplinary Counsel v. Czmus*, 889 A.2d 1197, 1203 (Pa. 2005) ("The primary purpose of our lawyer discipline system in Pennsylvania is to protect the public . . . and deter unethical conduct."). The decision on the amount of restitution is also made by Appellee, with no input by the victim. *See* Pa. R.D.E. 531.

Even calculating a penalty by reference to the amount due to a victim does not detract from the penal nature of the payment. The Fourth Circuit deemed a payment a non-dischargeable penalty even when the disgorgement remedy was determined "by the amount . . . purchasers lost, [and where plaintiff] intend[ed] to use some or all of its recovery to reimburse those purchasers." *U.S. Dep't of Housing & Urban Development v. Cost Control Marketing & Sales Management of Va., Inc.*, 64 F.3d 920, 928 (4th Cir. 1995). That court determined that "so long as the government's interest in enforcing a debt is *penal*, it makes no difference that injured persons may thereby receive compensation for pecuniary loss." *Id. See also In re Young*, 577 B.R. 227, 231 (Bankr. W.D. Va. 2017) ("Even though there is a one to one relationship between the debt and victims' loss and expenses there is a long line of cases that finds this type of debt nondischargeable under 11 U.S.C. § 523(a)(7).").

Debtor argues that the Court should adopt the reasoning in *Kassas* to conclude that the payments to Appellee were compensation for pecuniary loss, but the reasoning laid out by the Ninth Circuit does not apply precisely to Pennsylvania's Client Security Fund. *Kassas v. State Bar of California*, 49 F.4th 1158 (9th Cir. 2022). *Kassas* concerns California's Client Security Fund (CSF), which is a similar, though not identical, entity to Appellee. In that opinion, the Ninth Circuit explained that "at every step of the CSF process, the State Bar is focused on compensating victims for their actual pecuniary losses, or seeking compensation for the CSF's actual payments." *Id.* at

1164. The same is not true of Appellee. For example, the Ninth Circuit notes that payments to the CSF are limited to "actual pecuniary loss," and applies only "interest," whereas Pa. R.D.E. 531 explicitly contains a 10% annual interest requirement as an additional penal tool. *Compare* Pa. R.D.E. 531 *with* Cal. Bus. & Prof. Code § 6140.5(c). Additionally, Appellee more explicitly delineates the reimbursement with 10% interest as a "penalty." *See* Pa. R.D.E. 531-32.

The Pennsylvania Rules condition reinstatement as an attorney upon payment of the penalty. *See* Pa. R.D.E. 531. This condition focuses on the disposition of the attorney rather than the victim, further illustrating that the purpose of the payment is to discipline the attorney rather than compensate the victim. *See Young*, 577 B.R. at 232 (A reinstatement order conditioned on payment to a victim's compensation fund "serves society's broader rehabilitative and penal goals and cannot be viewed narrowly as merely representing compensation to the victims.").

As a policy matter, holding these payments to be dischargeable would frustrate the purpose of the bankruptcy statute. The debt was non-dischargeable in the first instance because the Bankruptcy Court found that Debtor had obtained money from clients by false pretenses – specifically, by failing to perform work that she had contracted to perform. Now, Debtor wants to find a way to make payments flowing from that misconduct dischargeable regardless. The *Kelly* court read § 523(a)(7) to "create[] a broad exception [to dischargeability] for all penal sanctions, whether they be denominated fines, penalties, or forfeitures," and ultimately includes restitution under the same umbrella. 479 U.S. at 51. Requiring Debtor to make restitution and conditioning her reinstatement on that restitution "serves society's broader rehabilitative and penal goals," rather than narrow compensatory goals. *Young*, 577 B.R. at 232.

## V.    CONCLUSION

For the foregoing reasons, the Court will affirm the Bankruptcy Court's Order dated January 30, 2023.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**